**Linda S. KAHN, Appellant,**

v.

**Farrell KAHN, Appellee.**

**No. 93–3248.**

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1994.

Decided April 21, 1994.

860

Francis G. Slay, St. Louis, MO, argued (Jim J. Shoemake, on the brief), for appellant.

Alan C. Kohn, St. Louis, MO, argued (John A. Klobasa, on the brief), for appellee.

Before BEAM, Circuit Judge, BRIGHT, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Linda Kahn (Linda) appeals from the district court's entry of summary judgment in favor of her ex-husband, Farrell Kahn (Farrell), holding Linda's claims for breach of fiduciary duty, conversion, constructive fraud and fraud barred by res judicata. The present action, seeking tort damages and an accounting, involves allegations of wrongful conduct that occurred in the course of the marital relationship and that are inextricably intertwined with those issues subject to the parties' previously adjudicated dissolution proceeding. Consequently, we hold that the domestic relations exception to diversity of citizenship jurisdiction applies and precludes the exercise of federal jurisdiction.[1] We dismiss the appeal and direct the district court on remand to dismiss the action for lack of subject matter jurisdiction.

## I. BACKGROUND

Linda filed for divorce after almost thirty years of marriage. She alleged various improprieties as to Farrell's marital conduct, which generally included extramarital affairs, procuring loans secured by marital property and Linda's property without Linda's permission, misappropriating the net profits from the sale of Linda's separate property, converting funds and failing to render an accounting. Citing the aforesaid conduct, Linda's counsel requested that the court award Linda a "heavily disproportionate share of the marital property." Tr. on Appeal, Dissolution Proceeding (Oct. 9, 1990), Vol. I, at 27. Trial of the dissolution action took nine days. Thereafter, on April 12, 1991, the Circuit Court of St. Louis County issued a Second Amended Decree of Dissolution, distributing the property at issue as follows:

| Petitioner Linda Kahn | Amount | Respondent Farrell Kahn | Amount |
|---|---|---|---|
| A. Separate Property | 1,187,593 | A. Separate Property | 7,100 |
| B. Marital Property | 4,224,423 | B. Marital Property | 3,743,518 |
| C. Debt Allocation | 220,625 | C. Debt Allocation | 937,341 |
| NET MARITAL PROPERTY | 4,003,798 | NET MARITAL PROPERTY | 2,806,177 |
| % of Net Marital Property | 58.8 | % of Net Marital Property | 41.2 |

Appellant's App. at 100. The Missouri Court of Appeals affirmed the circuit court's decree. *Kahn v. Kahn,* 839 S.W.2d 327 (Mo.Ct. App.1992).

Linda brought the instant action against her ex-husband on January 15, 1992, in the United States District Court for the Eastern District of Missouri. Linda's four-count

1. We recognize that at least one of our sister circuits, and some legal commentators, speak of abstention when invoking the domestic relations exception. *See, e.g., Congleton v. Holy Cross Child Placement Agency, Inc.,* 919 F.2d 1077, 1079 n. 3 (5th Cir.1990); Rebecca E. Swenson, Note, *Application of the Federal Abstention Doctrines to the Domestic Relations Exception to Federal Diversity Jurisdiction,* 1983 Duke L.J. 1095 (Nov.1983); Anthony B. Ullman, Note, *The Do-mestic Relations Exception to Diversity Jurisdiction,* 83 Colum.L.Rev.1824 (Nov.1983). Courts generally use abstention in the context of a dispute relating to domestic relations when the controversy does not fall within the exact purview of divorce, alimony or child custody, but instead is closely related. *See Lannan v. Maul,* 979 F.2d 627, 631 (8th Cir.1992); *Gonzalez Canevero v. Rexach,* 793 F.2d 417, 418 (1st Cir.1986); *Csibi v. Fustos,* 670 F.2d 134, 137 (9th Cir.1982).

complaint alleged that Farrell committed the following torts: breach of fiduciary duty, fraud, constructive fraud and conversion. The complaint asserted essentially the same conduct as set forth in the dissolution petition.[2] Linda sought both compensatory and punitive damages and an accounting. The district court granted Farrell's motion for summary judgment, concluding that, based upon the previous dissolution action, res judicata barred litigation of the tort claims. *Kahn v. Kahn,* No. 4:92CV00063–JCH, slip op. at 11 (E.D.Mo., Aug. 2, 1993).

## II. DISCUSSION

 The domestic relations exception, first articulated in *Barber v. Barber,* 62 U.S. (1 How.) 582, 584, 16 L.Ed. 226 (1859), divests the federal courts of jurisdiction over any action for which the subject is a divorce, allowance of alimony, or child custody. *Ankenbrandt v. Richards,* —— U.S. ——, ——, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992). In addition, as observed previously, *ante* n. 1, when a cause of action closely relates to but does not precisely fit into the contours of an action for divorce, alimony or child custody, federal courts generally will abstain from exercising jurisdiction. In the case at bar, we determine that Linda's claims for relief, although drafted to sound in tort, are so inextricably intertwined with the prior property settlement incident to the divorce proceeding that subject matter jurisdiction does not lie in the federal court.

 Missouri law establishes a statutory procedure for divorce, in which *"the circuit court shall enter a decree of dissolution if"* (1) certain residency requirements are met, (2) the marriage is irretrievably broken and (3) "[t]o the extent it has jurisdiction to do so, *the court has considered, approved, or made provision for* child custody, the support of any child of the marriage who is entitled to support, *the maintenance of either spouse, and the disposition of property."*

Mo.Ann.Stat. § 452.305.1 (Vernon 1986) (emphasis added).

The division of property incident to Missouri's statutory dissolution action, requires consideration of

*all relevant factors including:*

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) *The conduct of the parties during the marriage;* and

(5) Custodial arrangements for minor children.

Mo.Ann.Stat. § 452.330.1 (Vernon Supp.1993) (emphasis added). In addition, the distribution of marital property is relevant to whether the trial court awards alimony as well as the amount to be awarded. § 452.335.2(1) (Vernon Supp.1993). Accordingly, the distribution of marital property is intricately related to the divorce determination and the issue of alimony.

Although the division of property under § 452.330.1 does not necessarily require the same proof to support a damages award based on the torts of breach of fiduciary duty, fraud, constructive fraud and conversion[3], *cf. Nebbitt v. Nebbitt,* 589 S.W.2d 297, 300 (Mo. banc 1979) (divorce action does not affect spouse's right to sue for conversion of property), here the evidence proffered in both proceedings is the same and involves conduct that occurred exclusively throughout the duration of the marital relationship. That Linda received property in the dissolution proceeding in part based on the wrong-

---

**2.** See Addendum for a comparison of the pleadings in both the dissolution action and the case at bar, which illuminates the extent to which the state and federal cases are interrelated.

**3.** Missouri law recognizes as a separate cause of action a suit based upon injuries intentionally inflicted by one spouse against the other, *Townsend v. Townsend,* 708 S.W.2d 646, 650 (Mo. banc 1986), whether the damages incurred are to property or person.

ful conduct constituting the intentional torts is relevant to any award of damages based on that same conduct.[4] By necessity then, proof of Linda's tort claims would require that the district court inquire into matters directly relating to the marital relationship or the property settlement. *Compare Gonzalez Canevero v. Rexach,* 793 F.2d 417, 418–19 (1st Cir.1986) (domestic relations exception applied to suit for money damages or partition order relating to half interest in corporation controlled by ex-husband) *and Csibi v. Fustos,* 670 F.2d 134, 138 (9th Cir.1982) (domestic relations exception prevented exercise of jurisdiction over action seeking to establish rights between two women claiming to be intestate's surviving spouse) *with Lannan v. Maul,* 979 F.2d 627, 631 (8th Cir.1992) (district court erroneously invoked domestic relations exception to preclude jurisdiction over action for breach of contract by child's conservator seeking from trustees insurance proceeds paid on father's insurance policy) *and Lloyd v. Loeffler,* 694 F.2d 489, 493 (7th Cir.1982) (domestic relations exception inapplicable to tort action for wrongful interference with child custody).

Based upon our determination that the district court did not have subject matter jurisdiction, we do not express any opinion as to the merits of Linda's tort claims against Farrell, or whether the prior dissolution action bars said claims from being brought in the state court. Appeal dismissed and case remanded to the district court to enter a dismissal of the action without prejudice, for lack of subject matter jurisdiction.

## ADDENDUM

### First Amended Petition for Dissolution

15. From the beginning of the marriage, Respondent assumed exclusive responsibility for and control of the business affairs of the family and has continued to do so throughout the marriage. In 1979, at the request of Respondent, Petitioner executed two separate powers of attorney . . . .

16. By virtue of the powers of attorney, Respondent has maintained and been in control of all transactions involving the purchase and sale of assets, of all bank accounts containing marital monies and Petitioner's separate monies. All financial and business records of marital assets and Petitioner's separate assets

### Federal Complaint

6. From the beginning and throughout the duration of the couple's marriage, defendant, who was experienced in business matters, assumed exclusive control over and responsibility for the couple's business affairs and managed the couple's properties and finances.

9. On April 16, 1979, plaintiff, at defendant's request, signed two separate powers of attorney, . . . .

4. Although the state trial court did not make factual findings or set forth the bases for the property distribution, the Missouri Court of Appeals in *Kahn,* 839 S.W.2d at 331, stated that "we presume the trial court considered all the evidence in dividing the marital property."

have been maintained by him and his employees.

17. As a result of Petitioner's granting the aforesaid powers of attorney to Respondent, she and Respondent stood in a fiduciary relationship, under which Respondent owed the following obligations to Petitioner:

(a) to be perfectly frank with Petitioner;

(b) to make full disclosure of all material facts about business transactions to Petitioner;

(c) to strictly avoid misrepresentation to Petitioner;

(d) in all respects to act with the utmost good faith, fidelity and loyalty to Petitioner;

(e) to engage in business transactions which were in Petitioner's best interest;

(f) to place Petitioner's interest above all others, including Respondent's;

(g) to invest borrowed money only for purposes which were in Petitioner's interest;

(h) to invest marital funds and Petitioner's separate funds with prudence and care, avoiding undue risk and speculation;

28. As a result of plaintiff's granting the aforesaid powers of attorney to defendant, plaintiff and defendant stood in a fiduciary relationship under which defendant owed the following duties and obligations to plaintiff:

(a) to make full disclosure to plaintiff of all material facts about business transactions concerning the use and disposition of the couple's funds and assets, plaintiff's separate funds and assets, and borrowed funds, including the Bank borrowings and his use and disposition of the proceeds from the sale of the Lindbergh Property;

(b) to strictly avoid misrepresentation to plaintiff;

(c) in all respects to act with the utmost good faith, fidelity and loyalty to plaintiff;

(d) to engage in business transactions which were in plaintiff's best interest;

(e) to place plaintiff's interest above all others, including defendant's;

(f) to use borrowed funds only for purposes which were in plaintiff's interests;

(g) to invest the couple's funds and plaintiff's separate

(i) to keep adequate and accurate records of financial transactions; and

(j) to account to Petitioner for his use and disposition of marital funds, her separate funds and borrowed funds.

funds with prudence and care, avoiding undue risks and speculation;

(h) to keep adequate and accurate records of financial transactions; and

(i) to account to plaintiff for his use and disposition of the couple's funds and assets, plaintiff's separate assets, and borrowed funds.

---

18. Respondent breached his fiduciary duties to Petitioner in the following respects, *all of which should be taken into account by the Court in the allocation of property between the parties and the awarding of permanent maintenance to Petitioner:*

. . . .

F. Respondent procured loans from Royal Bank in the aggregate amount of $1,398,000,00 [sic], secured by marital assets and Petitioner's separate assets. Respondent has not made a full accounting to Petitioner of his use and disposition of the proceeds of these loans.

29. Defendant breached his fiduciary duty to plaintiff in at least the following respects:

. . . .

(b) After 1984, defendant increased the indebtedness to the Bank from $898,000.00 to the aggregate amount of $1,398,000.00, secured by the couple's assets by signing plaintiff's name on the collateral pledge notes and other loan documents all without notifying plaintiff and without plaintiff's knowledge, authorization or consent;

. . . .

(f) Defendant failed to account to plaintiff for his use and disposition of the proceeds from the Bank loans and the sale of the Lindbergh Property.

---

18H. In 1985, Respondent caused $1,000,000.00 of the proceeds of the sale of certain real estate which was Petitioner's separate property to be deposited in accounts in his name at Drexel, Burnham & Lambert. Subsequently, Respondent withdrew nearly all of said funds. He has failed to fully account to Petitioner for the use and disposition of

14. Subsequent to the plaintiff notifying defendant of her desire not to be part of any further borrowings, plaintiff sold certain real estate, consisting of . . . the "Lindbergh Property."

. . . .

29(c) Defendant failed to use . . . the proceeds from the sale

said funds

of the Lindbergh Property in plaintiff's best interest, but instead used the proceeds for his own personal benefit to support his extravagant lifestyle, and speculative, imprudent and unprofitable business ventures;

29(d) Defendant misrepresented to plaintiff his use of the proceeds from the sale of the Lindbergh Property;

. . . .

29(f) Defendant failed to account to plaintiff for his use and disposition of the proceeds from ... the sale of the Lindbergh Property.

---

18M. On July 5, 1988, Petitioner revoked any and all powers of attorney she had previously signed. Thereafter Respondent misappropriated approximately $52,250 from the checking account at Royal Bank in Petitioner's name by affixing Petitioner's facsimile signature to checks drawn on that account, despite the revocation of the powers of attorney. He has failed to account to Petitioner for the use and disposition of these funds.

48. In or around October of 1988, approximately three months after plaintiff revoked any and all powers of attorney previously signed by her, defendant, against plaintiff's will and in open defiance to plaintiff's ownership and right to possession of said funds, did convert said funds to his own use by affixing plaintiff's facsimile signature to checks drawn on said account at the Bank in the total amount of $52,250, which was the total balance of said account at the time, thereby closing out the account, all without plaintiff's knowledge, authorization or consent. Defendant has refused and failed to return said funds to plaintiff.

Appendix at 6–8, 15–17, 23–24, 82–83, 85–88.