Lonnie M. STRASEN, Plaintiff,

v.

James L. STRASEN and Naoko Strasen,
a/k/a Naoko Saegusa, Defendants.

No. 94–C–0966.

United States District Court,
E.D. Wisconsin.

Aug. 23, 1995.

Thomas E. Warmington, Warmington & Warmington, S.C., Brookfield, Wisconsin, for plaintiff Lonnie M. Strasen.

Robert T. Malloy, Milwaukee, Wisconsin, for defendant James L. Strasen.

Ness Flores, Flores Law Office, Waukesha, Wisconsin, for defendant Naoko Strasen.

## DECISION AND ORDER

WARREN, District Judge.

Before the Court are two motions filed by defendant Naoko Strasen (nee Saegusa), and joined by defendant James Strasen. The

defendants have asked the Court to either dismiss the above-captioned action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively to transfer venue to the Southern District of Texas pursuant to 28 U.S.C. § 1406. For the following reasons, both motions will be denied.

## I. BACKGROUND

Plaintiff Lonnie Strasen married defendant James Strasen in 1975. The Strasens resided together as husband and wife in Massachusetts, Texas, and the United Kingdom until 1988, when Mrs. Strasen returned from the United Kingdom to the United States— with the couple's children, but without Mr. Strasen. In 1991, James Strasen filed for divorce in Waukesha County, Wisconsin. On June 4, 1993, the Wisconsin Family Court granted a divorce and divided the Strasen estate based upon a marital settlement agreement. After the divorce, James Strasen married defendant Naoko Strasen. Apparently, the defendants began living together in the United Kingdom in 1990, moved to Singapore in 1991, and finally to Texas in 1993, where they currently reside.

The plaintiff claims that during the pendency of the divorce proceedings James Strasen concealed assets, committed perjury, and misrepresented his financial dealings and holdings so as to intentionally deprive Mrs. Strasen of her interest in the couple's marital property. She further claims that James Strasen fraudulently transferred marital assets to Naoko Strasen in an attempt to conceal assets from the family court.

On August 30, 1994, Lonnie Strasen filed this lawsuit in federal court alleging seven causes of action (including conspiracy, fraudulent misrepresentation, conversion, fraudulent transfer, and unjust enrichment) against both James Strasen and Naoko Strasen. Defendant Naoko Strasen filed an answer along with these motions to dismiss on October 4, 1994. Prior to the resolution of these motions, the plaintiff filed a motion for leave to amend her complaint, and on June 19, 1995, this Court granted her motion. In addition to permitting the plaintiff to file an amended complaint, we ordered the parties to submit supplemental briefs discussing the effect of the amendments on the pending motions and the applicability of various abstention doctrines to this lawsuit. Naoko Strasen filed a supplemental brief; James and Lonnie Strasen both failed to submit their supplemental briefs within the time specified by the Court.[1] The defendants' motions are now ready for resolution.

## II. MOTION TO DISMISS

Prior to discussing the defendants' jurisdictional objections, we first address an ambiguity in the record which makes our analysis of these motions problematic. After reviewing all the pleadings, motions, and supporting materials in this case, the status of the Wisconsin family court's divorce decree remains unclear to the Court. The defendants claim that there is no final judgment in state court and that "the matter before the Waukesha County Family Court is an ongoing matter placed on the calendar by the court on a day to day basis pending further action by either party and pending further determination of marital, and support and maintenance issues." (Reply Brief of Naoko Strasen at p. 1.) In contrast, the plaintiff has alleged that the divorce decree and related property settlement in the Wisconsin family court constitutes a final decision by the state court.[2] (Plaintiff's Response Brief at p. 5.)

We are troubled by these contrasting, and unsupported, contentions relating to a fact

---

1. On August 4, 1995, the plaintiff filed a motion for leave to file a late supplementary brief. Because the Court concludes that the plaintiff has failed to show good cause for her failure to comply with its deadline, this motion is denied.

2. Our review of Wisconsin law appears to support the plaintiff's contention that the Wisconsin divorce decree and property settlement is final and not reviewable in the state court. Wisconsin

law does permit a court to relieve a party from a judgment obtained through "[f]raud, misrepresentation, or other misconduct of an adverse party." Wis.Stats. § 806.07(1)(c). However, this relief can only be granted within one year after the judgment was entered. Wis.Stats. § 806.07(2). The Strasens' divorce decree was entered in September of 1993—nearly two years ago.

critical to the resolution of the pending motions. Our attempt to clarify this issue by requesting supplemental briefing was unsuccessful; defendant Naoko Strasen failed to provide any support to her allegation that the divorce proceeding is on-going, and the plaintiff failed entirely to respond to the Court's request. Notwithstanding our uncertainty regarding this important fact, because this case is still in the pleading stage, we must proceed with our analysis assuming the plaintiff's claims are true. *See Janowsky v. United States,* 913 F.2d 393, 395 (7th Cir. 1990). Accordingly, we presume that the Wisconsin proceeding has run its course and that the court's decision is final.

The defendants cite several grounds in support of their motion to dismiss; we address each in turn.

## A. *SUBJECT MATTER JURISDICTION*

■ Lack of subject matter jurisdiction is an appropriate basis for a motion to dismiss. Fed.R.Civ.P. 12(b)(1). Although the burden of proving subject matter jurisdiction lies with the plaintiff, *Thomson v. Gaskill,* 315 U.S. 442, 444, 62 S.Ct. 673, 674, 86 L.Ed. 951 (1942), we are obliged to accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir.1993).

### 1. *Domestic Relations Exception*

■ In support of their motion to dismiss, the defendants first cite the long-standing exception to diversity jurisdiction for cases involving domestic relations. *See Ex Parte Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890) ("[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."); *Barber v. Barber,* 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1858) ("[W]e disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony."). The Supreme Court has recently reaffirmed the continued vitality of the domestic relations exception to diversity juris-

diction, but emphasized that the "exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992).

Since the plaintiff in this case does not seek a decree of divorce, alimony or child custody, her claim is not barred simply because it has some relation to a divorce proceeding. *See Lloyd v. Loeffler,* 694 F.2d 489, 492 (7th Cir.1982). Moreover, one of the defendants, Naoko Strasen, has no marital relationship with the plaintiff whatsoever, and appears to stand in the same position vis a vis Lonnie Strasen as "any other opponent in a tort suit brought in federal court pursuant to diversity jurisdiction." *Ankenbrandt,* 504 U.S. at 704 n. 7, 112 S.Ct. at 2215 n. 7. Accordingly, we conclude that the domestic relations exception does not divest this Court's jurisdiction over this case.

### 2. *Rooker–Feldman Doctrine*

■ The defendants have not invoked the *Rooker–Feldman* doctrine in support of their motion to dismiss. In fact, in her supplemental brief, defendant Naoko Strasen claims "that *Rooker–Feldman* is not applicable to this case because the state court has not reached a final determination and that it is an ongoing proceeding." (Supplemental Brief at p. 3.) However, as discussed above, we will accept the plaintiff's claim that the divorce decree and related property settlement in the Wisconsin family court does constitute a final decision by the state court. So doing, we conclude that the *Rooker–Feldman* doctrine may apply to this case. Inasmuch as this involves a matter of subject matter jurisdiction, we raise the issue *sua sponte. See GASH Associates v. Village of Rosemont,* 995 F.2d 726, 727 (7th Cir.1993).

■ Under the *Rooker–Feldman* doctrine, "lower federal courts lack jurisdiction to engage in appellate review of state-court determinations." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 21, 107 S.Ct. 1519, 1531, 95 L.Ed.2d 1 (1987) (Brennan, J., concurring) (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) and *District of Columbia Court of*

*Appeals v. Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 1317, 75 L.Ed.2d 206 (1983)). *See also Ritter v. Ross,* 992 F.2d 750, 753 (7th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994). A district court may .not entertain an argument that, even if not argued in state court, is "inextricably intertwined" with a state court judgment. *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. at 1316 n. 16; *Ritter,* 992 F.2d at 753. Allegedly federal claims are inextricably intertwined with a state court judgment when they are not " 'separable from and collateral to' the merits of the state court judgment," *Pennzoil,* 481 U.S. at 21, 107 S.Ct. at 1531 (Brennan, J., concurring), but are such that "the district court is in essence being called upon to review the state-court decision." *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1316 n. 16. *See also Leaf v. Supreme Court of the State of Wisconsin,* 979 F.2d 589, 598–600 (7th Cir.1992) (discussing the "inextricably intertwined" standard), *cert. denied,* — U.S. —, 113 S.Ct. 2417, 124 L.Ed.2d 639 (1993).

In this lawsuit, the plaintiff alleges that defendant James Strasen misrepresented his financial circumstances during the negotiation of the marital settlement agreement with the plaintiff, and that both defendants conspired to take advantage of that misrepresentation by depriving Lonnie Strasen of her share of the marital estate. (Amended Complaint ¶¶ 11–24.) Moreover, the complaint alleges marital assets were unlawfully converted and placed in the possession of Naoko Strasen. (Amended Complaint ¶¶ 25–52.)

Many of these claims necessarily implicate the Wisconsin state court divorce judgment and the incorporated marital settlement agreement. One cannot steal that which one already owns. Thus, if the property in question was not marital property, but instead was James' individual property, the plaintiffs' claims of fraud and conversion would fail. Whether the property in question belonged

to James individually or James and Lonnie collectively was a question decided by the state court.

However, for several reasons, we nevertheless conclude that this action is not inextricably intertwined with the state court divorce judgment. First, in this case the Wisconsin court did not fully adjudicate the issue of what property belonged to which spouse. While a Wisconsin family court may consider many different factors regarding the marriage and the parties thereto in dividing marital property upon divorce,[3] *see* Wis.Stats. § 767.255, here the court simply approved an agreement reached between the Strasens to divide the marital property based upon the amount of property in each party's possession. (*See* Marital Settlement Agreement at p. 7.)

Moreover, the essence of Mrs. Strasen's federal suit is that the defendants fraudulently induced her to enter into this agreement by misrepresenting the assets that James Strasen possessed when the agreement was reached. In our view, resolution of the various claims asserted by the plaintiff does not require appellate-style review of the Wisconsin state court determination. The plaintiff's claims relate to the process leading to the procurement of the state court judgment. Unlike a prototypical *Rooker–Feldman* case where the injury complained of was *caused by* the state court judgment, here the injury complained of was caused by the conduct of the defendants. *See GASH Assoc.,* 995 F.2d at 729. Thus, we conclude that the plaintiff has presented an "independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* at 728.

Although this conclusion differs from the one reached by the Eighth Circuit in *Kahn v. Kahn,* 21 F.3d 859 (8th Cir.1994), we believe this case is readily distinguishable.[4] The *Kahn* court concluded that a district court should have abstained from deciding a case

**3.** Factors include (1) the length of the marriage, (2) the property brought to the marriage by each spouse, (3) substantial assets held by one spouse not subject to division, (4) the parties' respective earning capacities, and (5) any maintenance or family support payments. Wis.Stats. § 767.255.

**4.** Although the *Kahn* court applied *Rooker–Feldman*–type reasoning, it declared that it was applying the domestic relations exception to diversity jurisdiction.

in which a woman sought to recover from her ex-husband for breach of fiduciary duty, conversion, constructive fraud, and fraud. The court held that "the plaintiff's claims for relief, although drafted to sound in tort, are so inextricably intertwined with the prior property settlement incident to the divorce proceeding that subject matter jurisdiction does not lie in the federal court." *Id.* at 861. The basis for this conclusion was, however, a Missouri statute which *required* the state court to consider the conduct of the parties during the marriage in making determinations relating to marital property. Therefore, the court held that "the distribution of marital property is intricately related to the divorce determination and the issue of alimony." *Id.* In contrast to the facts underlying *Kahn,* here the Strasens' property disposition was not necessarily dependent upon factors relating to the divorce; in fact, the Wisconsin state court simply approved an agreement entered into by the parties.[5]

Accordingly, because we find that the plaintiff's claims in this suit are not inextricably intertwined with the state court determination, we conclude that the *Rooker–Feldman* doctrine does not apply.

## B. *ABSTENTION*

■ A dismissal on abstention grounds is in the nature of a dismissal under Federal Rule 12(b)(6). *See Fore Way Express, Inc. v. Wisconsin Dept. of Industry,* 660 F.Supp. 310, 311 (E.D.Wis.1987) (citing *Kentucky West Virginia Gas Co. v. Penn. Public Util. Com'n,* 791 F.2d 1111, 1114 n. 4 (3d Cir. 1986)). In deciding whether abstention is appropriate under this Rule, the Court must therefore accept the truth of all well-pleaded allegations and make all possible inferences in favor of the plaintiff. *See Sherwin Manor Nursing Center, Inc. v. McAuliffe,* 37 F.3d 1216, 1219 (7th Cir.1994).

■ We begin our discussion of the abstention doctrine with the well-established premise that abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy prop-

erly before it." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (quotations omitted). *See also Deakins v. Monaghan,* 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988) (federal courts have a "virtually unflagging" obligation to adjudicate controversies over which they have jurisdiction). However, even where a district court does have subject matter jurisdiction over a case, under some circumstances a lawsuit may seek relief that is so inextricably tied to a purely domestic relations action that a federal court should abstain from exercising its jurisdiction.

### 1. *Burford Abstention*

■ The defendants assert that *Burford*-type abstention is appropriate in this case. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 332, 63 S.Ct. 1098, 1106, 87 L.Ed. 1424 (1943) (abstention appropriate where regulatory scheme in question "so clearly involved basic problems of [state] policy that equitable discretion should be exercised to give the [state] courts the first opportunity to consider them"). The Supreme Court recently described the *Burford* doctrine as follows:

> Where timely and adequate state-court review is available, a federal court [should abstain from hearing a case]: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Service Inc. v. Council of City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (quoting *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). *See also Hartford Insurance Co. v. Borg–*

---

**5.** A Wisconsin court is statutorily *precluded* from considering marital misconduct in dividing property upon divorce. *See* Wis.Stats. § 767.255.

*Warner Corp.*, 913 F.2d 419, 425 (7th Cir. 1990).

The Supreme Court has recently suggested that *Burford* abstention "might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody. This would be so when a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.'" *Ankenbrandt*, 504 U.S. at 705, 112 S.Ct. at 2216 (citations omitted). Indeed, several courts have found that *Burford* abstention is appropriate in circumstances similar to those present here. For example, the Fifth Circuit addressed claims similar to those made by Mrs. Strasen in *DuBroff v. DuBroff*, 833 F.2d 557 (5th Cir. 1987), and concluded that *Burford* abstention was appropriate because: "[1] there is perhaps no state administrative scheme in which federal court intrusions are less appropriate than in domestic relations law, ... [2] this case presents novel and dubious questions of state family law, ... [and] [3] all of [plaintiff's] claims can be brought in the state court action." *Id.* at 561–62 (quoting *Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir.1986) and *Friends of Children, Inc. v. Matava*, 766 F.2d 35, 37 (1st Cir.1985)). *See also American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir.1990) ("A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts.") (citations omitted).

In our view, *Burford* abstention is not appropriate in this case for several reasons. First, it is not at all clear that timely and adequate state court review is available to Mrs. Strasen; in fact, she has alleged that the "Wisconsin Family Court is unable to effectively exercise and enforce its jurisdiction and authority" over this controversy. (Amended Complaint ¶ 10.) Second, although this action involves the application of state law, difficult and complex questions of state law are not present. At its heart, this case is about fraud, not family law. This Court has often adjudicated similar contro-versies, and we see no difficulty in applying state law here. Finally, while we are mindful of the fact that Wisconsin has a strong interest in the uniform administration of its family law system, (as evidenced by its special courts for actions affecting the family, *see* Wis.Stats. § 767 *et seq.*), we see no danger of disrupting that system by adjudicating the controversy now before us. We find it extremely unlikely that the state's interest in uniform resolution of family-related lawsuits would be undermined by a federal court enforcing standards of fair-dealing in negotiating marital settlement agreements.

The facts of this case differ from those present in several other cases where courts have invoked the *Burford* abstention doctrine. For example, in *Farkas v. D'Oca*, 857 F.Supp. 300, 303–04 (S.D.N.Y.1994), the court abstained because the validity of the plaintiff's federal-court RICO action depended on a determination of whether certain property was separate or marital property. Similarly, in *Johnson v. Thomas*, 808 F.Supp. 1316, 1320 (W.D.Mich.1992), the outcome of the federal suit depended upon the status of the parties as determined by the state courts. In contrast, this civil suit involves the conduct of the defendants prior to and during the divorce. The state court property division is only tangentially related to the plaintiff's current claims. *See Ankenbrandt*, 504 U.S. at 705, 112 S.Ct. at 2216 ("Where, as here, the status of the domestic relationship has been determined as a matter of state law, and in any event has no bearing on the underlying torts alleged, we have no difficulty in concluding that *Burford* abstention is inappropriate."). Moreover, in both *Farkas* and *Johnson*, the issues in question *had yet to be determined by the state courts;* the family court proceedings were on-going. Here, the divorce decree and property division has already been settled in state court.

Accordingly, the defendants' request that the Court abstain on *Burford* grounds will be denied.

## 2. *Colorado River Abstention*

The defendants also claim that abstention is appropriate in this case under the *Colora-*

*do River* doctrine. The Supreme Court described this doctrine as follows:

> In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction [between state and federal courts], the federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into consideration both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. Only the clearest of justifications will warrant dismissal.

*Colorado River,* 424 U.S. at 818–19, 96 S.Ct. at 1247. *See also Lloyd,* 694 F.2d at 492 ("When a case must begin in state court, as a divorce or custody case must, retention of any ancillary litigation by the same court is supported by considerations of judicial economy, and by considerations of relative expertness since the issues in an ancillary proceeding may be the same as those in cases that are within the core of the domestic relations exception and hence within the exclusive jurisdiction of the state courts.").

■ Thus, under the *Colorado River* doctrine, "a federal court may stay or dismiss a suit in exceptional circumstances when there is a concurrent state proceeding and the stay or dismissal would promote 'wise judicial administration.'" *Caminiti and Iatarola v. Behnke Warehousing, Inc.,* 962 F.2d 698, 700 (7th Cir.1992). *Colorado River* abstention is inappropriate in this case because the defendants fail to satisfy the threshold requirement that there be a concurrent state court proceeding. As discussed above, despite the defendants' claims to the contrary, we feel compelled to accept the plaintiff's allegation that the state court proceeding is over and done with. Accordingly, we must conclude that there is no pending state proceeding and the *Colorado River* abstention does not apply.

■ Were it otherwise, we would nevertheless conclude that *Colorado River* abstention is inappropriate in this case. In determining whether abstention would be proper, the Court must first determine whether the proceedings (assuming *arguendo* that there is a concurrent state proceeding) are parallel. *See Day v. Union Mines, Inc.,* 862 F.2d 652, 655 (7th Cir.1988). If they are, the Court must then "consider the factors listed in *Colorado River* and its progeny to determine whether there are exceptional circumstances permitting a stay." *Id.*

"Suits are ' "parallel" when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.' " *Id.* (quoting *Calvert Fire Ins. Co. v. Am. Mut. Reins. Co.,* 600 F.2d 1228, 1229 n. 1 (7th Cir.1979).) In this case, we conclude that neither the parties nor the issues are sufficiently similar to support the conclusion that the suits would be parallel. First, one of the two defendants in this federal lawsuit (Naoko Strasen) was never a party to the state court divorce proceeding. Moreover, the issues present in the two cases are considerably different. In this federal case, the plaintiff seeks relief for damages caused by the conduct of the defendants during and prior to the negotiation of the marital settlement agreement.

Furthermore, weighing the factors supporting or disfavoring a stay, *see Caminiti and Iatarola,* 962 F.2d at 701 (quoting *LaDuke v. Burlington N.R.R.,* 879 F.2d 1556, 1559 (7th Cir.1989)), the Court concludes that the defendants have not established the existence of exceptional circumstances which would justify a stay. The sixth factor—the adequacy of state-court action to protect the federal plaintiff's rights—weighs most heavily against a stay or dismissal. There is no indication in the record which would suggest that the state family court can review the defendants' conduct and grant the relief the plaintiff requests. (*See* note 1, *supra.*) Moreover, Mrs. Strasen has alleges in her complaint that the "Wisconsin Family Court is unable to effectively exercise and enforce its jurisdiction and authority," (Amended Complaint ¶ 10); the defendants have introduced no evidence to the contrary. None of the other factors tip the scales the other way. We see no grave danger of piecemeal litigation—there is no indication in the current

record which would suggest that the issues in this litigation are being litigated elsewhere. We see no inconvenience to the defendants in proceeding in federal court, and, although state law will govern this action, application of state law will present minimal difficulty in this case.

Therefore, the defendants' request that the Court abstain on *Colorado River* grounds will also be denied.

### III. MOTION TO TRANSFER VENUE

■ In the alternative, the defendants have asked the Court to transfer this action to the Southern District of Texas pursuant to 28 U.S.C. § 1406. Section 1406 provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Under the federal venue statute,

[a] civil action wherein jurisdiction is founded only on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

In asserting that venue is proper in the Eastern District of Wisconsin, the plaintiff invokes subsection (2) of this statute, contending that a substantial part of the events giving rise to her lawsuit took place in this district. Specifically, she alleges that one of her causes of action is for the recovery of property which was under the jurisdictional supervision of the Wisconsin Circuit Court in this district when it was fraudulently concealed from the plaintiff and removed to Texas. (Amended Complaint ¶ 2.) She further alleges that numerous acts of perjury and fraud, and numerous overt acts in furtherance of the conspiracy were committed in Wisconsin. Finally, with respect to defendant Naoko Strasen, the plaintiff relies on 28 U.S.C. § 1391(d) which provides that an alien may be sued in any district.

In light of the 1990 and 1992 amendments to section 1391(a), which broadened the range of appropriate fora from those "where the claim arose" to include those where "a substantial part of the events or omissions giving rise to the claim occurred," and assuming the allegations in the plaintiff's complaint are true, we conclude that the plaintiff has established that venue is proper in the Eastern District of Wisconsin. Moreover, the fact that one defendant in this case is an alien strongly suggests that venue over the entire action is proper in this—or any other—district. *See Japan Gas Lighter Association v. Ronson Corp.*, 257 F.Supp. 219, 225 (S.D.N.Y.1966).

Accordingly, because we conclude that venue has been laid in an appropriate district, the defendants' motion to dismiss or transfer under 28 U.S.C. § 1406 will be denied.

■ The defendants also appear to argue that transfer of venue is appropriate under 28 U.S.C. § 1404, which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In evaluating whether transfer is appropriate under this statute, "[t]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point to trial in the alternative forum." *Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir.1982) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). The party moving for transfer bears the burden of overcoming this strong presumption by "establishing by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986).

In an attempt to meet this burden, the defendants cite the following factors which they contend support transfer of venue to the Southern District of Texas:

1. The fact that the occurrences giving rise to the plaintiff's complaint took place in Texas;

2. The sources of proof and the properties involved are all located in Texas;

3. The defendants both reside in Texas; and

4. All potential witnesses reside in Texas and are beyond the reach of process of this Court.

(Defendants' Motion for Change of Venue ¶¶ 1–6.)

These factors are not sufficient to overcome the strong presumption in favor of the plaintiff's choice of forum. As discussed above, it appears from the plaintiff's complaint that many of the events giving rise to this suit took place in this district. While it also appears likely that some of the events took place in Texas and in other jurisdictions, the center of gravity of this case is not evident at this time. Absent a clear indication that a district other than ours is the center of gravity of this case, we will not abrogate the plaintiff's choice of forum. In addition, the plaintiff has indicated that her financial resources are extremely limited and that she may be unable to pursue her claim if forced to proceed in a distant forum. This is not a case of forum-shopping; the plaintiff resides in the Eastern District of Wisconsin and the district clearly has some connection to the facts underlying this suit. We cannot conclude that the interest of justice requires transfer. Accordingly, the defendant's motion will be denied in this regard.

## IV. SUMMARY AND ORDER

Therefore, because the Court concludes that it has subject matter jurisdiction over this case, and because the Court further concludes that abstention is not appropriate,

**IT IS HEREBY ORDERED** that the defendants' motion to dismiss this case on jurisdictional grounds is DENIED.

Furthermore, because the Court concludes that venue is proper in this district, and because the Court also concludes that the interest of justice does not require transfer,

**IT IS FURTHER ORDERED** that the defendant's motion to transfer venue to the Southern District of New York is **DENIED**.

**IT IS FURTHER ORDERED** that counsel for all parties shall appear at *9:15 A.M. on Wednesday, September 20, 1995* in Room 390, United States Courthouse, 517 East Wisconsin Avenue, Milwaukee, Wisconsin, for a status conference.

**SO ORDERED.**