# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3912

_____

Michael M. Wallace

*Plaintiff - Appellant*

v.

Claire Hayden Wallace

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: September 26, 2013
Filed: November 20, 2013

_____

Before RILEY, Chief Judge, BYE and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

Collateral to an ongoing divorce proceeding in Missouri state court, Michael Wallace filed an identity theft tort claim in federal court under Mo. Rev. Stat § 570.223 against his wife, Claire Wallace, and alleged diversity jurisdiction, see 28 U.S.C. § 1332(a)(1). Michael asserted that during their marriage Claire stole his identity and "surreptitiously open[ed] multiple credit cards in [his] name." Noting the

Wallaces' pending state divorce proceeding, the district court[1] dismissed the case for lack of subject matter jurisdiction under the domestic relations exception to federal jurisdiction. Having appellate jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

The Wallaces married in late 2006. They separated on May 10, 2010, and in February 2011, Claire filed for divorce in the Circuit Court of Pemiscot County, Missouri. Michael alleges that shortly after the divorce filing he discovered Claire had used his social security number and other personal information, without his knowledge, to obtain several credit cards in his name. Michael also claims Claire charged approximately $40,000 on these cards, and since his discovery of Claire's conduct, at least one credit card company has filed suit against him for failing to pay such charges. According to Michael, Claire had herself listed as an "authorized signer," enabling her to use the card without retaining any liability for the charges. All of this alleged conduct occurred during the Wallaces' marriage.

On December 14, 2011, Michael filed a diversity action in federal district court against Claire claiming identity theft, under Mo. Rev. Stat. § 570.223. Michael requested $100,000 in actual damages, statutory treble damages, and injunctive and declaratory relief requiring Claire to satisfy the debts and prohibiting her from using his identifying information. Claire failed to respond, whereupon the clerk entered a default against her. Michael moved for a default judgment, and Claire moved to set aside the entry of default.

On November 8, 2012, the district court, without deciding the parties' motions, vacated the clerk's entry of default and *sua sponte* dismissed this suit for lack of subject matter jurisdiction. The district court held the domestic relations exception

---

[1]The Honorable Stephen N. Limbaugh Jr., United States District Judge for the Eastern District of Missouri.

precluded its jurisdiction over Michael's claims because the claims were "tied so closely to matters appurtenant to the ongoing divorce litigation." Relying on Kahn v. Kahn, 21 F.3d 859 (8th Cir. 1994), the district court found two facts decisive: (1) Claire's alleged credit card charges were made during the marriage, and (2) the discovery requests involved in the state court divorce proceeding indicated these charges were "among the matters being raised by the parties" to be addressed by the state court.[2] Michael timely appealed.

## II.    DISCUSSION

"The existence of subject-matter jurisdiction is a question of law that this court reviews *de novo*." ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters, 645 F.3d 954, 958 (8th Cir. 2011). "The domestic relations exception, first articulated in Barber v. Barber, 62 U.S. ([2]1 How.) 582, 584 (185[8]), divests the federal courts of jurisdiction over any action for which the subject is a divorce, allowance of alimony, or child support," including "the distribution of marital property." Kahn, 21 F.3d at 861. The question here is whether Michael's identity theft claim against Claire falls within the domestic relations exception to federal jurisdiction.

### A.    Domestic Relations Exception

In Kahn, a Missouri state court entered a decree of dissolution, which distributed marital property disproportionately in favor of the ex-wife. See id. at 860. Almost a year later, the ex-wife brought a federal diversity tort law action against her ex-husband. See id. Both the federal suit and the state divorce proceeding essentially alleged the same misconduct of the ex-husband: "extramarital affairs, procuring loans secured by marital property and [the ex-wife]'s property," "misappropriating the net profits" from sales of the ex-wife's property, and "converting funds" without

_____

[2]At the time the district court dismissed this case, the divorce proceeding was ongoing. The Missouri circuit court has since entered judgment.

rendering an accounting. See id. at 860-61. All of his misconduct occurred during the parties' marriage. See id. at 861.

In Kahn we held, "[The ex-wife]'s claims for relief, although drafted to sound in tort, are so inextricably intertwined with the prior property settlement incident to the divorce proceeding that subject matter jurisdiction does not lie in the federal court." Id. In reaching that conclusion, we pointed to a Missouri statute requiring a divorce court take into account "'*[t]he conduct of the parties during the marriage*'" when distributing marital property, id. (quoting Mo. Rev. Stat. § 452.330.1(4) (emphasis in original)), as well as the impact the distribution would have on an alimony award, see id. (quoting Mo. Rev. Stat. § 452.335.2(1)). Given the scope of a divorce court's considerations under Mo. Rev. Stat. § 452.330.1, we concluded that the fact "[t]hat [the ex-wife] received property in the dissolution proceeding in part based on the wrongful conduct constituting the intentional torts [wa]s relevant to any award of damages based on that same conduct." Id. at 861-62. With the two remedies—tort damages in the federal suit and a disproportionate property distribution in the state divorce proceeding—based on the same "wrongful conduct," the tort action would require a federal court to "inquire into matters directly relating to the marital relationship or the property settlement." Id. at 862. Claims so "inextricably intertwined" with a state divorce proceeding were beyond the scope of federal jurisdiction. Id. at 861-62.

Kahn thus stands for the proposition that a federal suit is "inextricably intertwined" with a state domestic proceeding, thereby depriving the federal court of subject matter jurisdiction, where the requested federal remedy overlaps the remedy at issue in the state proceeding. Id. This occurs where the federal suit involves a remedy which is essentially domestic—where, in addressing the same conduct involved in a state domestic proceeding, the effect of a remedy in the federal suit is to modify, nullify, or predetermine the domestic ruling of the state proceeding.

As in Kahn, Michael alleges a tort claim based on conduct that occurred during the marriage. And the state divorce proceeding, like that in Kahn, took place in a Missouri state court bound by Mo. Rev. Stat. § 452.330.1(4) to consider "[t]he conduct of the parties during the marriage." During two days of the state court proceeding the parties disputed the credit card charges and the identity of the card user. According to Claire's statements at oral argument here, the state court labeled the debt "marital" and divided it evenly between Michael and Claire. If the federal district court were to award Michael the injunctive and declaratory relief he requests here, the award, at least in part, would undermine the judgment of the state court. These remedies would essentially require that the federal court remove the label "marital debt" and reallocate the debt division the state court has already "deem[ed] just after considering" the conduct at issue here. Mo. Rev. Stat. § 452.330.1. In this same vein, an award of damages would modify the state court's marital distribution. Because the remedies requested here effectively would nullify part of the divorce court's judgment based on the same conduct, the two cases are "inextricably intertwined" within the meaning of Kahn.

The domestic relations exception, as explained in Kahn, precludes subject matter jurisdiction over this case.

### B.     Continuing Validity of Kahn

We decline Michael's request to reconsider Kahn. "'It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.'" Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (quoting Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002) (per curiam)). We are bound by Kahn.

We reject Michael's contention that Marshall v. Marshall, 547 U.S. 293 (2006) constitutes an "intervening Supreme Court decision [] inconsistent with" Kahn. McCullough v. AEGON USA Inc., 585 F.3d 1082, 1085 (8th Cir. 2009). Marshall involved the probate exception to subject matter jurisdiction. See Marshall, 547 U.S.

-5-

at 308. The <u>Marshall</u> court's discussion of the domestic relations exception did nothing to alter the scope of that exception. <u>See</u> <u>id.</u> at 305-08. Rather, the Supreme Court's discussion described what the Supreme Court had done in previous cases. <u>See</u> <u>id.</u> Such discussion does not constitute an inconsistent "intervening Supreme Court decision" such that we would ignore our prior ruling. <u>See</u> <u>McCullough</u>, 585 F.3d at 1086 (explaining that a Supreme Court decision which did not specifically change the law does not allow our court to disregard its prior decisions).

## III. CONCLUSION

Following <u>Kahn</u>, we affirm.

_____