# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1952

_____

Randal E. McCullough,                    *
                                         *
              Appellant,                  *
                                         *
       v.                                 *
                                         *
AEGON USA, Inc.; AEGON USA Inc.          *
Board of Directors; Patrick S. Baird;    *
James A. Beardsworth; Kirk W. Buese;     *
Tom A. Schlossberg; Arthur C.            *
Schneider; Mary Taiber; James R.         *
Trefz; Does 1-20; Diversified            *
Investment Advisors, Inc.;               *
Transamerica Financial Life Insurance    *
Company; Transamerica Investment         *
Management, LLC; Transamerica Life       *   Appeal from the United States
Insurance Company; Transamerica          *   District Court for the
Occidental Life Insurance Company;       *   Northern District of Iowa.
Marilyn Carp; Dan Kolsrud; James         *
Halfpap; Jill Anderson; Jeff Rosen;      *
Martha McConell; Steve Albritton;        *
Mark Mullin; James McArdle; Diane        *
Meiners; Daniel Fox; Investment          *
Committee; Trustee of the Plan,          *
                                         *
              Appellees.                  *
_____                   *
                                         *
                                         *
AARP,                                     *
                                         *
       Amicus on Behalf of Appellant,    *
                                         *

American Benefits Council,           *

                                          *

    Amicus on Behalf of Appellee.    *

————————

Submitted: December 12, 2008
Filed: November 3, 2009

————————

Before BYE and COLLOTON, Circuit Judges, and GOLDBERG,[1] Judge.

————————

COLLOTON, Circuit Judge.

Randal McCullough, a participant in a defined-benefit pension plan sponsored and administered by AEGON USA, Inc. ("AEGON"), brought suit under section 502(a)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(2). He alleged that various plan fiduciaries breached their fiduciary duties to the plan and engaged in prohibited transactions in violation of ERISA. The district court[2] granted summary judgment for the defendants, holding that McCullough lacked Article III standing to assert his claims. We affirm on an alternative ground, following the circuit precedent of *Harley v. Minnesota Mining & Manufacturing Co.*, 284 F.3d 901 (8th Cir. 2002), and its construction of § 1132(a)(2).

————

[1]The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

[2]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

I.

As a result of his former employment with one of AEGON's subsidiaries, McCullough is a participant in the AEGON USA, Inc. Pension Plan ("the Plan"), which is sponsored and administered by AEGON and covered by ERISA. The Plan is a defined-benefit plan, which provides participants fixed periodic payments upon retirement from a general pool of plan assets. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-41 (1999).

In October 2005, McCullough filed this action against AEGON and various other defendants in the United States District Court for the Central District of California. In his first amended complaint, McCullough alleged that the defendants breached their fiduciary duties under ERISA. *See* 29 U.S.C. § 1104. He asserted that the defendants caused the Plan to invest in funds offered by AEGON subsidiaries and affiliates and to purchase products and services from such affiliates and subsidiaries, resulting in the payment of fees "that were higher than the norm." McCullough also alleged that this conduct violated 29 U.S.C. § 1106, which prohibits certain transactions between the Plan and fiduciaries and between the Plan and parties in interest. In addition, McCullough asserted the same claims against defendants relating to the management of a defined-contribution plan.

McCullough sought a refund to the Plan of "all fees paid to AEGON Subsidiaries and Affiliates by the Plan[], including disgorgement of profits," as well as "equitable restitution and other appropriate equitable monetary relief." He also sought an injunction against defendants prohibiting "further violations of their ERISA fiduciary responsibilities, obligations, and duties," and any other appropriate equitable relief, "including the permanent removal of the Defendants from any positions of trust with respect to the Plan[] and the appointment of independent fiduciaries to administer the Plan[]."

AEGON successfully requested transfer of the case to the Northern District of Iowa, and then moved for partial summary judgment. The parties agreed that at the time McCullough filed his complaint, and at all times from 2001 to 2006, the Plan was "substantially overfunded," according to actuarial valuation reports of the Plan's assets and liabilities. The parties also agreed that Plan never failed to pay benefits owed to participants or beneficiaries, and that AEGON had no intention to terminate the Plan. In light of these facts, AEGON argued that under *Harley*, 284 F.3d 901, McCullough lacked standing to assert his claims against the Plan. The district court agreed that *Harley* controlled, and granted AEGON's motion for summary judgment. *See McCullough v. AEGON USA, Inc.*, 521 F. Supp. 2d 879, 894 (N.D. Iowa 2007). The parties subsequently filed a joint stipulation of dismissal, *see* Fed. R. Civ. P. 41(a)(1)(A)(ii), dismissing with prejudice McCullough's claims relating to the defined-contribution plan, and the district court entered final judgment. McCullough now appeals the grant of summary judgment, and we review *de novo*.

II.

ERISA provides that the Secretary of Labor and participants, beneficiaries, and fiduciaries of an employee benefit plan may bring an action "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109 makes fiduciaries of a plan personally liable to the plan for any losses resulting from their breaches of "any of the responsibilities, obligations, or duties imposed upon fiduciaries" by ERISA. *Id.* § 1109(a). It also empowers the court to award "such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." As relevant here, ERISA imposes certain duties on plan fiduciaries in 29 U.S.C. § 1104, including the duty to act "solely in the interest of the participants and beneficiaries" of the plan, and to act "with the care, skill, prudence, and diligence" of "a prudent man acting in a like capacity and familiar with such matters." *Id.* § 1104(a)(1). Fiduciaries are also prohibited by 29 U.S.C. § 1106 from

-4-

engaging in certain transactions with the plan or causing the plan to engage in certain transactions with a "party in interest." *Id.* § 1106(a)-(b).

In *Harley*, this court concluded that § 1132(a)(2) does not permit a participant in a defined-benefit plan to bring suit claiming liability under § 1109 for alleged breaches of fiduciary duties when the plan is overfunded. 284 F.3d at 905-07. The *Harley* plaintiffs alleged that fiduciaries of the defined-benefit plan in which they participated breached fiduciary duties by failing to investigate adequately and monitor properly a $20 million investment in a hedge fund, resulting in a complete loss of the investment. The plaintiffs also alleged that the plan fiduciaries breached their fiduciary duties by allowing the Plan to enter into a prohibited transaction under § 1106(b)(1) when it paid a $1.17 million fee to the hedge fund's investment advisor. *See id.* at 903-04, 908.

On appeal, this court affirmed the district court's grant of summary judgment for the defendants. With respect to the failure-to-investigate and failure-to-monitor claims, the court held that § 1132(a)(2) did not permit the plaintiffs to bring suit because the plan's surplus was sufficiently large that the "investment loss did not cause actual injury to plaintiffs' interests in the Plan." *Id.* at 907. The court explained that "a contrary construction [of § 1132(a)(2)] would raise serious Article III case or controversy concerns," because it would "permit[] participants or beneficiaries who have suffered *no* injury in fact" to bring an action "to enforce ERISA fiduciary duties on behalf of the Plan." *Id.* at 906. The court also reasoned that "the purposes underlying ERISA's imposition of strict fiduciary duties" – namely, "the protection of individual pension rights" – "are not furthered by granting plaintiffs standing," because the plaintiffs' individual pension rights are "fully protected," and "would if anything be adversely affected by subjecting the Plan and its fiduciaries to costly litigation." *Id.* at 907. Although the court did not identify the precise text of § 1132(a)(2) that it was construing, we presume the court determined that the suit would not be one "for appropriate relief" under the circumstances. On the prohibited-

transaction claim, the court did not discuss whether § 1132(a)(2) permitted the suit, but dismissed the claim on the merits instead. *See id.* at 908-09.

McCullough, like the *Harley* plaintiffs, brought this action under § 1132(a)(2) and asserts that the defendants are liable to the Plan under § 1109 for breaching their fiduciary duties to the Plan under § 1104. As in *Harley*, the Plan is a defined-benefit plan, and McCullough does not dispute that the Plan was "substantially overfunded" at the time he brought suit. Unless there is a basis for this panel to disregard *Harley*, therefore, McCullough may not bring his § 1104 claim under § 1132(a)(2). *See Drake v. Scott*, 812 F.2d 395, 400 (8th Cir. 1987) ("One panel of this Court is not at liberty to disregard a precedent handed down by another panel. Only the Court en banc can take such action.").

McCullough also asserts a claim that the defendants were liable to the Plan under § 1109 because they caused the Plan to engage in prohibited transactions in violation of § 1106. The court in *Harley* skipped to the merits of a claim involving § 1106 without addressing whether a participant may bring such a claim under § 1132(a)(2) against a "substantially overfunded" defined-benefit plan. 284 F.3d at 908-09. McCullough does not argue, however, that a claim alleging a violation of § 1106 should be treated differently than one alleging a violation of § 1104, and like the district court, 521 F. Supp. 2d at 892, we see no logical basis for a distinction.

McCullough makes two principal arguments why *Harley* does not preclude his action. First, although acknowledging that *Harley* was decided on statutory grounds, he argues that the Supreme Court's intervening decision regarding Article III standing in *Sprint Communications Co. v. APCC Services, Inc.*, 128 S. Ct. 2531 (2008), undermines *Harley*. A limited exception to the prior panel rule permits us to revisit an opinion of a prior panel if an intervening Supreme Court decision is inconsistent with the prior opinion. *Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000). McCullough argues that *Sprint* is such an intervening decision.

-6-

In *Sprint*, the Supreme Court held that "an assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor." 128 S. Ct. 2533. The Court found the "history and precedent" of allowing assignees to bring suit, particularly the "strong tradition . . . of suits by assignees for collection," to be "well nigh conclusive" in deciding the case, *id.* at 2541-42 (internal quotation omitted), but also held that assignees "satisfy the Article III standing requirements articulated in more modern decisions of [the] Court." *Id.* at 2542. In considering whether the assignees suffered an injury in fact, the Court acknowledged that the assignees "did not originally suffer any injury," but explained that the assignors "assigned their claims to the [assignees] lock, stock, and barrel." *Id.*

*Sprint* also relied on the Court's prior decision in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), which held that a relator possesses standing to bring a *qui tam* action under the False Claims Act "because the Act 'effect[s] a partial assignment of the Government's damages claim' and that assignment of the 'United States' injury in fact suffices to confer standing on [the relator].'" *Sprint*, 128 S. Ct. at 2542 (quoting *Vermont Agency*, 529 U.S. at 773, 774) (alteration in original). The Court noted that in *Vermont Agency*, it had "stated quite unequivocally that 'the assignee of a claim has standing to assert the injury in fact suffered by the assignor.'" *Id.* (quoting *Vermont Agency*, 529 U.S. at 773).

McCullough contends that after *Sprint*, there is no constitutional concern with interpreting § 1132(a) to permit a participant in an overfunded ERISA plan to sue fiduciaries based on an injury to the plan. He acknowledges that unlike the assignees in *Sprint*, a plan participant has not received a contractual assignment of the plan's claim, but he asserts that Congress has conferred an analogous right to sue in § 1132(a)(2). McCullough therefore contends that *Sprint* is inconsistent with the holding of *Harley* that a plan participant may not bring an action under § 1132(a)(2) when the plan is overfunded.

We are not convinced that *Sprint* sweeps as broadly as McCullough suggests. *Sprint* and *Vermont Agency* both involved plaintiffs who were assigned claims by parties who were originally injured. *See Sprint*, 128 S. Ct. at 2542; *Vermont Agency*, 529 U.S. at 773. *Sprint* also relied on the historical recognition of an assignee's ability to sue, 128 S. Ct. at 2536-42, and *Vermont Agency* relied on the "long tradition of *qui tam* actions." 529 U.S. at 775. Here, however, there is neither a long history of recognizing suits by ERISA plan participants to sue on behalf of a plan, *see Harley*, 284 F.3d at 907, nor any assignment by the Plan to McCullough to sue on its behalf. Nor does McCullough assert that § 1132(a)(2) "assigns" a claim belonging *to the government*, as did the *qui tam* statute at issue in *Vermont Agency*. *See* 529 U.S. at 773.

McCullough suggests instead that Congress assigned a claim of one private party (the ERISA plan) to another private party (a participant in the plan). This court in *Harley* was reluctant to ascribe that intention to Congress, believing that such an interpretation of § 1132(a)(2) raised serious constitutional concerns. If Congress could assign an ERISA plan's claim to a participant who is not injured, the court wondered, then what principled reason would preclude Congress from assigning the claim to any stranger? *See* 284 F.3d at 906-07 ("If the statute authorized any stranger to the plan to bring such an action, would that suffice to confer standing? Surely not, for 'Article III forecloses the conversion of courts of the United States into judicial versions of college debating forums.'") (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 473 (1982)). *Sprint* does not purport to revolutionize the law of standing by authorizing Congress to "assign" claims from one private party to another and thereby to create a constitutionally sufficient injury in fact. To the contrary, the Court in *Sprint* thought it was the dissenting opinion that advocated "a sea change in the law," 128 S. Ct. at 2543, and suggested that its holding merely assured continuity – citing, for example, that "[t]rustees bring suits to benefit their trusts; guardians ad litem bring suits to benefit their wards; receivers bring suit to benefit their receiverships; assignees in bankruptcy

-8-

bring suit to benefit bankrupt estates; executors bring suit to benefit testator estates; and so forth." *Id*. Without more specific guidance from the Supreme Court that it has expanded Article III standing as broadly as McCullough suggests – and beyond the historically grounded examples cited in *Sprint* – we do not feel at liberty to disregard this court's more circumspect view in *Harley*.[3]

There is another reason why *Sprint* does not compel us to disregard *Harley*. The statutory holding of *Harley* did not rest solely on constitutional avoidance. The court also reasoned that allowing participants in an overfunded plan to bring an action under § 1132(a)(2) would not advance ERISA's primary purpose of protecting individual pension rights, because the pension rights of such plaintiffs are "fully protected," and "would if anything be adversely affected by subjecting the Plan and its fiduciaries to costly litigation." *Harley*, 284 F.3d at 907. This aspect of the prior panel's rationale survives, no matter how broadly one interprets *Sprint* and its discussion of Article III standing.

McCullough's second bid to avoid circuit precedent is based on a factual distinction between this case and *Harley*. He contends that because this action seeks to enjoin ongoing and future violations of ERISA, rather than just to recover losses to a plan from a single investment transaction that allegedly violated ERISA, he should be permitted to bring suit under § 1132(a)(2). McCullough's factual distinction, however, is not material to the reasoning of the prior panel. *Harley* reasoned that a breach of a fiduciary duty causes no harm to a participant when the plan is overfunded, and that allowing costly litigation would run counter to ERISA's

---

[3]Nor do we think that *Sprint* stands for the more general proposition urged by McCullough that a party who suffers no injury has standing to bring an action as *a representative* of an injured third-party, so long as "the party bringing suit is legally authorized to sue." *Sprint* made clear that it did not involve representational or third-party standing, because the plaintiffs were asserting their own legal rights under a contractual assignment. *See* 128 S. Ct. at 2544.

purpose of protecting individual pension rights. That logic applies whether an action alleges a single breach or a series of breaches.

*Harley* addressed only claims for monetary relief, and McCullough also seeks injunctive relief under § 1132(a)(2). Given *Harley*'s holding that a participant suffers no injury as long as the plan is substantially overfunded, however, we see no basis to construe § 1132(a)(2) to authorize an action against fiduciaries of an overfunded plan for injunctive relief, but not for the monetary relief sought in *Harley*. McCullough points to cases from other circuits concluding that a plan participant may seek injunctive relief under § 1132(a)(3), *see Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607-10 (6th Cir. 2007); *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 455-56 (3d Cir. 2003), but he has not relied on that section. *See McCullough*, 521 F. Supp. 2d at 892 n.8. As to § 1132(a)(2), we are bound by circuit precedent.

The balance of McCullough's brief is a frontal assault on the reasoning of *Harley*. He contends that *Harley* takes too narrow a view of a plan participant's injuries, misapplies the Supreme Court's standing jurisprudence, *e.g.*, *Gollust v. Mendell*, 501 U.S. 115, 125-27 (1991), and undermines the enforcement mechanism created by Congress in ERISA. These points echo arguments raised by the Secretary of Labor in support of a petition for rehearing en banc in *Harley*. Whatever the merit of these contentions, they challenge the decision of a prior panel, and must therefore be addressed to the court en banc.

\* \* \*

The judgment of the district court is affirmed.

BYE, Circuit Judge, dissenting.

I believe the Supreme Court's recent decision in Sprint Communications Co. v. APCC Services, Inc., 128 S. Ct. 2531 (2008), compels us to reach a different result in this case than the result reached in Harley v. Minnesota Mining & Manufacturing Co., 284 F.3d 901 (8th Cir. 2002). I therefore respectfully dissent.

"Although one panel of this court ordinarily cannot overrule another panel, this rule does not apply when the earlier panel decision is cast into doubt by a decision of the Supreme Court." Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 838 (8th Cir. 1997). In order to disregard Harley, we must "explicitly identify the error or changed circumstances and explain why a different result is justified." Jacobs v. Lockhart, 9 F.3d 36, 38 (8th Cir. 1993). For the reasons discussed below, I believe Sprint requires us to disregard Harley.

The majority concludes Sprint does not compel us to disregard Harley because the latter turned on statutory grounds, rather than on Article III standing, and the statutory holding in Harley remains intact after Sprint. The notion Harley turns on a statutory holding is dubious at best. Although Harley purported to avoid the standing issue by interpreting the statute in a way which prohibits participants or beneficiaries from bringing suit to recover for a loss suffered by the plan, the statute plainly and unambiguously permits such an action. See 29 U.S.C. § 1132(a)(2) ("A civil action may be brought . . . by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."). Thus, as I pointed out in my dissent in Harley, "we have no choice but to address the Article III question head-on." Harley, 284 F.3d at 910 (Bye, J., dissenting).

Remarkably absent from Harley is any discussion of the statutory language it purports to interpret in order to avoid the constitutional standing concerns. In this case, the majority's discussion of Harley's statutory holding consists of a single

-11-

sentence speculating about the textual basis for the holding.  See Ante at 5 (recognizing Harley does not identify the textual basis for its holding and merely "presum[ing]" what it might be).  As a consequence, both decisions seem to rest on a free-floating statutory interpretation untethered to any actual statutory construct.  The resolution of McCullough's ability to sue to recover for a loss suffered by the plan necessarily requires us to address his Article III standing, and Sprint casts considerable doubt on the standing principles addressed in Harley.

The majority also suggests Harley's "statutory holding" rests on its conclusion which allows plan participants to sue on behalf of the plan would not advance ERISA's primary purpose of protecting individual pension rights, because it would subject a plan and its fiduciaries to costly litigation.  Id. at 9.  The majority also relies upon this aspect of Harley to avoid addressing Sprint's discussion of Article III standing.  This second aspect of Harley's "statutory holding," however, is also cast into doubt directly by the Supreme Court, which has recognized the very purpose for allowing beneficiaries and fiduciaries to sue on behalf of the plan under § 1132(a)(2) is "the common interest shared by [participants and beneficiaries] in the financial integrity of the plan."  Mass. Mut. Life Ins. Co. v. Russell,  473 U.S. 134, 141 n.9 (1985).

Harley held plan participants and beneficiaries cannot rely upon a loss suffered by a fully-funded defined benefit plan to establish Article III standing to bring suit under 29 U.S.C. § 1132(a)(2) to recover for a loss suffered by the plan.  The three elements which must be present to satisfy Article III standing requirements are: (1) the plaintiff has a concrete and particularized injury-in-fact which is actual or imminent rather than merely conjectural or hypothetical; (2) a causal connection exists between the injury and the challenged conduct; and (3) a favorable decision will likely redress the injury.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  This case, like Harley, turns on the presence or absence of the first element – a concrete injury-in-fact.

Harley focused on whether the plan participants or beneficiaries *themselves* suffered a concrete injury and concluded "the limits on judicial power imposed by Article III counsel against permitting participants or beneficiaries who have suffered *no* injury in fact from suing to enforce ERISA fiduciary duties on behalf of the Plan." 284 F.3d at 906. Thus, even though Harley recognized the defined benefit plan itself suffered an injury, id. at 905, the court concluded participants and beneficiaries lacked Article III standing because they themselves did not suffer a concrete injury.

Sprint addressed the question whether one party's concrete injury confers Article III standing on a second party who has the right to prosecute the former's claim pursuant to a contractual assignment. In that context, the Supreme Court indicated the assignors' concrete injury is the focus for purposes of Article III standing, not whether the assignees suffered an injury. See Sprint, 128 S. Ct. at 2542 (recognizing "an assignee can sue based on his assignor's injuries."). Indeed, Sprint went one step further by indicating the party with the right to prosecute the claim has Article III standing despite the lack of any right to the recovery. See id. ("[Our] inquiry focuses, as it should, on whether the *injury* that a plaintiff alleges is likely to be redressed through the litigation – not on what the plaintiff ultimately intends to do with the money he recovers."). As the dissenters noted, the majority separated "the right to recover from the right to prosecute a claim," 128 S. Ct. at 2551 (Roberts, C.J., dissenting), and recognized Article III standing for the party holding the right-to-prosecute "strand" of standing. Id.

Thus, Sprint indicates when A possesses the right to prosecute a claim on B's behalf, A has constitutional standing to bring a claim arising from B's injuries; that is, our inquiry in determining the presence of a concrete injury focuses on B's injury, not A's. If there is no legally significant difference between the party prosecuting the claim in Sprint (the assignees) and the party prosecuting the claim in Harley (the plan participants), Sprint necessarily casts doubt on Harley's failure to focus on the plan's concrete injury for standing purposes.

-13-

A notable difference between the <u>Harley</u> plan participants and the <u>Sprint</u> assignees is that the former obtained their right to prosecute the plan's claim pursuant to statute, while the latter obtained their right to prosecute the assignors' claims pursuant to contract. In <u>Sprint</u>, the Supreme Court discussed in detail the "history and tradition" of allowing an assignee to prosecute an assignor's claim. <u>See</u> <u>id.</u> at 2535-41. Admittedly, there is no similar history and tradition of allowing ERISA plan participants to prosecute a fully-funded defined benefit plan's claim. But the Supreme Court also noted "there is considerable, more recent authority showing that an assignee for collection may properly sue on the assigned claim in federal court." <u>Id.</u> at 2541. One of the "more recent" cases specifically discussed by the Supreme Court was <u>Vermont Agency of Natural Resources v. United States ex rel. Stevens</u>, 529 U.S. 765 (2000). <u>Id.</u> at 2542.

In <u>Vermont Agency</u>, the Supreme Court addressed the standing of a party with the statutory right to prosecute a *qui tam* action on behalf of the government under the False Claims Act[4] and held it was the *government*'s concrete injury which conferred standing on the relator. 529 U.S. at 774. The Court noted the False Claims Act effects a "partial assignment of the Government's damages claim," <u>id.</u> at 773, and referred to the relator as "the statutorily designated agent of the United States," <u>id.</u> at 772. <u>Sprint</u> subsequently clarified the key in <u>Vermont Agency</u> was the "partial assignment"[5] giving the relator the right to prosecute the claim, not the right to share in the recovery, because in <u>Sprint</u> the assignees still had standing despite the fact that

---

[4]The False Claims Act provides in relevant part: "A person may bring a civil action for a violation of section 3729 [of the False Claims Act] for the person and for the United States Government. The action shall be brought in the name of the Government." 31 U.S.C. § 3730(b)(1).

[5]The assignment of the right to prosecute was "partial" in <u>Vermont Agency</u> because both the relator and the government have the right to prosecute a claim for a violation of § 3729. <u>See</u> 31 U.S.C. § 3730(a) & (b).

-14-

any recovery would inure only to the benefit of the assignors.  See Sprint, 128 S. Ct. at 2542 (discussing Vermont Agency).

Reading Sprint and Vermont Agency together, there is no legally significant difference between the assignees in Sprint and the plan participants here or in Harley. Although an assignee's right to prosecute another's claim derives from contract, while an ERISA plan participant's right to prosecute a plan's claim derives from statute, in both instances the Supreme Court clearly instructs us as to the standing of the party with the right to prosecute the claim turns not on whether they themselves suffered an injury, but on whether the party holding the right-to-recover "strand" has a concrete injury which can be redressed by the lawsuit.  In Sprint it did not matter that the assignees would not retain any of the recovery from the lawsuit.  Likewise, here, it is irrelevant as to McCullough not being entitled to any recovery from the lawsuit. Applying Sprint and Vermont Agency to this case, then, McCullough has Article III standing to bring a claim arising from the Plan's injuries so long as he possesses the right to prosecute the Plan's claim pursuant to § 1132(a)(2), even though he may not possess any of the right to recover.

The only remaining question, then, for purposes of constitutional standing in this case, is to determine whether § 1132(a)(2) assigns to plan participants the right to prosecute on a *plan's* behalf, or whether it might also give them the right to prosecute a claim on their *own* behalf.  For if McCullough is merely suing on his own behalf, he still must show *he* suffered a concrete injury in order to establish his standing, and the lessons taught in Sprint and Vermont Agency would have no bearing.

The Supreme Court has already answered the question whether McCullough can sue on his own behalf under § 1132(a)(2) – actions authorized under § 1132(a)(2) to recover for violations of § 1109 must "inure[] to the benefit of the plan as a whole" and cannot inure to the benefit of individual plan participants.  Russell, 473 U.S. at

141; see also Conley v. Pitney Bowes, 176 F.3d 1044, 1047 (8th Cir. 1999) (indicating "§ 1109(a) provides relief only to a plan and not to individual beneficiaries"); Wald v. Southwestern Bell Corp. Customcare Med. Plan, 83 F.3d 1002, 1006 (8th Cir. 1996) (following Russell and holding that an individual plan participant could not sue on his own behalf under § 1132(a)(2)). Thus, the *only* right granted to plan participants and beneficiaries under § 1132(a)(2) is the right to prosecute a claim on a plan's behalf.

Harley distinguished Vermont Agency on the grounds that "the *qui tam* statute partially assigned the government's claim to the private *qui tam* relator; here, on the other hand, § 1132(a)(2) contains no such assignment." Harley, 284 F.3d at 907. We can presume Harley was consistent with the Supreme Court's decision in Russell, which clearly recognized § 1132(a)(2) does not assign the right to *recover* for a plan's injury to plan participants, but does give them the right to *prosecute* the plan's claim. Thus, the "assignment" Harley referred to in distinguishing Vermont Agency was the assignment of the right to *recover*, not the right to *prosecute*. Sprint makes clear the "assignment" which mattered in Vermont Agency was the assignment of the right to prosecute, not the right to recover. Sprint tells us, therefore, that Harley distinguished Vermont Agency upon an incorrect premise. What mattered in Vermont Agency, and thus what matters here, is § 1132(a)(2) statutorily assigns the right to prosecute the plan's claim to plan participants and beneficiaries: the fact § 1132(a)(2) contains no assignment of the right to recover is irrelevant.

Because Harley would compel a result opposite the one we reach when applying Sprint and Vermont Agency, the Supreme Court's decisions necessarily cast doubt on Harley. Under Sprint and Vermont Agency, McCullough's Article III standing to sue under § 1132(a)(2) turns not on whether he suffered an injury, but on whether the Plan suffered a concrete injury which can be redressed through this lawsuit.

I respectfully dissent.

_____

-16-