# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2093

_____

David Faltermeier, on behalf of himself and all others similarly situated

*Plaintiff - Appellant*

v.

FCA US LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: March 14, 2018
Filed: August 10, 2018

_____

Before WOLLMAN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

David Faltermeier appeals the district court's[1] grant of summary judgment against his claim that FCA US LLC ("FCA") violated the Missouri Merchandising Practices Act ("MMPA") by making deceptive representations about the safety of

---

[1] The Honorable D. Gregory Kays, United States District Judge for the Western District of Missouri.

certain Jeep vehicles. He also appeals the district court's denial of his motion to remand to state court, claiming that the jurisdictional amount-in-controversy requirements under the Class Action Fairness Act ("CAFA") have not been satisfied. We conclude that we have jurisdiction under CAFA, and affirm the district court's denial of the motion to remand and grant of summary judgment to FCA.

## I.    Background

In August of 2010, the National Highway Traffic Safety Administration ("NHTSA") began investigating an alleged safety defect affecting two particular kinds of Jeep Vehicles—2002-2007 Jeep Liberty vehicles and 1993-1998 Jeep Grand Cherokee vehicles. After three years of evaluating the vehicles, the NHTSA reached the preliminary conclusion that the vehicles were defective and that they faced an increased likelihood of dangerous fires in rear crashes.

On June 3, 2013, the NHTSA requested that FCA initiate a safety recall of the vehicles. FCA responded by issuing a press release to the public contesting the NHTSA's findings and stating that the vehicles were "safe and not defective." After two weeks passed, FCA issued a second press release, again stating that the vehicles were "not defective." However, the release announced that FCA had agreed with the NHTSA to a limited recall to install a trailer hitch assembly, which it asserted would help improve vehicle performance in low-speed accidents.

David Faltermeier purchased a 2003 Jeep Liberty from an unrelated third party in August of 2013, two months after the FCA's press releases. He admits he did not see the press releases until months after purchasing the Jeep.

On June 2, 2015, Faltermeier filed a Class Action Petition in the Circuit Court in Jackson County, Missouri, on behalf of all purchasers of the relevant Jeep vehicles in the State of Missouri since June 4, 2013 (the date of the first press release).

Faltermeier alleged that FCA's statements that the vehicles were "safe" and "not defective" were false and misleading. Faltermeier further alleged that FCA's proposed trailer hitch assembly did not remove the vehicles' safety defects in high-speed collisions and suggested that an appropriate remedy required the installation of a "fuel shield/skid plate."

FCA removed the case to the United States District Court for the Western District of Missouri under CAFA. Faltermeier sought remand, arguing in part that CAFA's amount-in-controversy requirement was not satisfied. On February 10, 2016, the district court denied the motion to remand, finding by a preponderance of the evidence that the "benefit of the bargain" damages alleged in this case would be above $5,000,000 dollars, if calculated as either the total value of overpayment or diminution in value damages. The court reached this conclusion by finding that 8,127 unique vehicles were potentially within the class and that the average sale price of a relevant vehicle was $6,638. Based on these facts, the court reasoned that a reasonable jury could find damages in excess of the CAFA jurisdictional limit.

On March 11, 2016, Faltermeier filed an amended complaint. In his amended complaint, Faltermeier again asserted that the federal courts lacked subject matter jurisdiction because Missouri law required "benefit-of-the-bargain" damages to be calculated as the lesser of diminution in value or cost of repair. Faltermeier argued that since the proposed fuel shield/skid plate repair could be implemented for as little as $320 a vehicle, the amount in controversy would be far under CAFA's $5,000,000 jurisdictional limit.

On May 26, 2016, the district court, recognizing that it had not fully explained alternative damages under the MMPA, entered an order clarifying its previous denial of remand. In the clarifying order, the district court addressed Faltermeier's cost of repair argument, finding that compensatory damages under Faltermeier's proposed measure of damages could total $3,605,010. The district court concluded that the

$5,000,000 jurisdictional limit was satisfied after taking into consideration the amount of potential attorneys' fees, which it found could well exceed $1,400,000. The court held that a stipulation to limit attorneys' fees to ensure the amount in controversy remained under $5,000,000 did not alter the amount in controversy as a matter of law.

On March 24, 2017, the district court granted summary judgment against Faltermeier, holding that FCA's alleged misrepresentations were not made "in connection with" Faltermeier's purchase of his Jeep. The court focused in particular on the lack of evidence supporting a factual nexus between the statements and Faltermeier's interactions with the third party salesman. The court recognized that dismissal of the only named plaintiff's claim was "not fatal to this putative class action." Given the state of the briefing, the court denied the motion to certify the class without prejudice, indicating that the motion could be renewed within thirty days of the order. On April 10, 2017, the parties filed a joint motion to approve a stipulation modifying the summary judgment order to remove the open language related to class certification. On April 12, 2017, the district court approved the stipulation and entered final judgment. This appeal followed.

## II.    Discussion

Faltermeier challenges both our jurisdiction under CAFA and the merits resolution of his claims. We consider each in turn.[2]

---

[2]FCA's argument that the appeal was untimely is without merit. See Waterson v. Hall, 515 F.3d 852, 855 (8th Cir. 2008) (alteration in original) (quoting Goodwin v. United States, 67 F.3d 149, 151 (8th Cir. 1995)) ("A district court decision is not final, and thus not appealable, unless there is 'some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as [the court] is concerned, is the end of the case.'").

## A.    Jurisdiction under CAFA

We review *de novo* a district court's denial of a motion to remand.  Menz v. New Holland North America, Inc., 440 F.3d 1002, 1004 (8th Cir. 2006) (citing Watson v. Philip Morris Cos., Inc., 420 F.3d 852, 855 (8th Cir. 2005)).  We review for clear error its finding of jurisdictional facts regarding the amount-in-controversy requirement.  See Usery v. Anadarko Petroleum Corp., 606 F.3d 1017, 1019 (8th Cir. 2010).

"CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)).  To determine whether the amount in controversy requirement is satisfied, a district court aggregates the claims of all named or unnamed persons who "fall within the definition of the *proposed* or certified class." Id. (citing § 1332(d)(1)(D)).

When a defendant "seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."  Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553 (2014).  However, if a plaintiff contests a defendant's asserted amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  Id. at 554.  The relevant jurisdictional fact when determining the amount in controversy "is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are."  Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002).

We must review the district court's determination concerning stipulations limiting attorneys' fees, and how they may factor into the district court's calculation of the amount in controversy. In Standard Fire, the Supreme Court concluded that a pre-certification damages stipulation can "tie [the plaintiff's] hands, but it does not resolve the amount in controversy question. . . ." 568 U.S. at 596 (abrogating our decision in Rolwing v. Nestle Holdings, Inc., 666 F.3d 1069 (8th Cir. 2012), that a damages stipulation could preclude removal under CAFA). The Supreme Court explained that precertification damages stipulations could not defeat CAFA-jurisdiction because absent and unbound class members might later enlarge the scope of recovery beyond the stipulated amounts. Id. at 593. The Court did not reach the issue of whether a stipulation limiting attorneys' fees could affect the amount-in-controversy question since the stipulation at issue in the case did not provide for that option. Id. at 596.

The reasoning of Standard Fire raises serious questions about the continued validity of Rolwing's holding on attorneys' fees stipulations, such that we may revisit the decision of the prior panel. See McCullough v. AEGON USA, Inc., 585 F.3d 1082, 1085 (8th Cir. 2009) (citing Young v. Hayes, 218 F.3d 850, 853 (8th Cir. 2000)) ("A limited exception to the prior panel rule permits us to revisit an opinion of a prior panel if an intervening Supreme Court decision is inconsistent with the prior opinion."). We find no reason to apply a different rule to a stipulation limiting the amount of attorneys' fees in order to defeat CAFA jurisdiction. See CMH Homes, Inc. v. Goodner, 729 F.3d 832, 833, 838-39 (8th Cir. 2013) (remanding to the district court to calculate the amount in controversy without regard to a stipulation limiting damages and attorneys' fees). The district court properly included in the jurisdictional amount the attorneys' fees that may be awarded.

The district court correctly found it had jurisdiction under CAFA. Cost of repair damages are an available form of damages under the MMPA. See Morehouse v. Behlmann Pontiac-GMC Truck Serv., Inc., 31 S.W.3d 55, 61-62 (Mo. Ct. App.

2000) (finding evidence of repair costs sufficient to support an actual damages award under the MMPA). The district court made findings on the total cost of repair damages based on the proof submitted by each side. Given the evidence, the district court's conclusion that "a fact finder might legally conclude" that the total repair cost (including labor and parts) was equal to $3,605,010 was not clearly erroneous.

The MMPA states that a court may "award to the prevailing party attorney's fees, based on the amount of time reasonably expended." Mo. Rev. Stat. § 407.025.1. The district court concluded that it was more likely than not that attorneys' fees could exceed $1.4 million, considering the expected length of the litigation, the risk and complexity involved in prosecuting class actions, and the hourly rates charged. Cf. Berry v. Volkswagen Group of America, Inc., 397 S.W.3d 425, 432-33 (Mo. 2013) (upholding award of $6,174,640 in attorneys' fees after five years of litigation). The district court's finding of fact on the potential fee amount was not clearly erroneous.

Accordingly, the district court's ruling that a finder-of-fact might legally conclude that the sum of damages and attorneys' fees would exceed $5,000,000 was not clearly erroneous. We affirm the district court's denial of the motion to remand.

### B. Deceptive Practices under the MMPA

The MMPA prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ." Mo. Rev. Stat. § 407.020.1. The district court held that it could not be shown that Faltermeier purchased his vehicle "in connection with" any alleged misrepresentation by FCA.

Under Missouri law, a wide range of deceptive conduct may qualify as "in connection with" a purchase. See Schuchmann v. Air Servs. Heating & Air

Conditioning, Inc., 199 S.W.3d 228, 233 (Mo. Ct. App. 2006) (quoting <u>Ports Petroleum Co., Inc. of Ohio v. Nixon</u>, 37 S.W.3d 237, 240 (Mo. banc 2001)). Nevertheless, to sustain an action an alleged misrepresentation must have a relationship with the sale. <u>See</u> <u>Conway v. CitiMortgage, Inc.</u>, 438 S.W.3d 410, 414 (Mo. banc 2014).

After carefully reviewing the record, we agree with the district court that Faltermeier's purchase had no relationship with the alleged misrepresentation. While actual reliance on the defendant's misrepresentation by the buyer is not required, we agree with the district court that evidence of some factual connection between the misrepresentation and the purchase is required. No evidence suggests that either the seller or the buyer was aware of the misrepresentation. Nor was the intermediary seller an unwitting conduit for passing on the substance of the misrepresentation. <u>Cf.</u> <u>Gibbons v. J. Nuckolls, Inc.</u>, 216 S.W.3d 667, 669 (Mo. banc 2007) (reversing trial court's dismissal of an action against a car wholesaler who withheld from a car dealer that a car had previously been in a crash, where the dealer then also represented to the consumer that the vehicle had not been in a crash).

## III.  Conclusion

We affirm.

_____