Cite as 2026 Ark. App. 270
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-25-56

|  |  |
|---|---|
| MICHAEL SANDERS AND MITCHELL SANDERS<br><br>APPELLANTS<br><br>V.<br><br>SUSAN SANDERS, INDIVIDUALLY AND AS TRUSTEE OF THE EMMETT EARLTON SANDERS, JR., AND SUSAN CARVER SANDERS JOINT REVOCABLE TRUST, DATED OCTOBER 1, 2002; AND PATRICK MCDANIEL, AS ADMINISTRATOR OF THE ESTATE OF EMMETT EARLTON SANDERS, JR.<br><br>APPELLEES | Opinion Delivered April 29, 2026<br><br>APPEAL FROM THE MADISON COUNTY CIRCUIT COURT<br>[NO. 44CV-21-124]<br><br>HONORABLE DOUG MARTIN, JUDGE<br><br>REVERSED AND REMANDED |

**MIKE MURPHY, Judge**

Appellants Michael Sanders and Mitchell Sanders appeal the decision of the Madison County Circuit Court granting appellee Susan Sanders's motion for summary judgment and denying their partial motion for summary judgment. We reverse and remand.

Michael and Mitchell are twin brothers and the sons of the late Emmett Earlton Sanders (Earlton), who passed away on December 11, 2020. Earlton was married to appellee Susan Sanders at the time of his death. Before his marriage to Susan, Earlton was married to Beatrice Sanders, the appellants' mother. Beatrice and Earlton had divorced in 2001.

As part of their divorce, Beatrice and Earlton executed a property settlement agreement (PSA). In that agreement, Earlton agreed that he would "execute a last will and testament or similar estate planning device whereby the parties' sons, Michael and Mitchell, will be entitled to inherit the first Two Hundred Thousand Dollars ($200,000.00) from the husband's estate at the time of his death." The contract further provided that Earlton would "not make gifts to third parties for the purpose of reducing the value of his estate to avoid any part of this obligation."

Earlton married Susan in July 2002; they had no children together. When Earlton died in 2020, all property in which he held an interest passed outside of probate. During his lifetime, Earlton never made any sort of will or estate-planning device pursuant to the PSA that satisfied his obligation in favor of his sons. On December 10, 2021, Michael and Mitchell brought this suit against Susan individually and as trustee of the joint trust she held with Earlton and against Patrick McDaniel as the administrator of Earlton's probate estate.

The sons claimed breach of contract for $200,000 from their father's estate on the basis of the PSA from the divorce with their mother. They alleged that "[d]uring his life and while married to Susan, Earlton transferred properties with current value in excess of $400,000 to Susan and the Sanders Revocable Trust." The complaint went on to explain that as a result of Earlton's failure to comply with the terms of the PSA, property in excess of $200,000 that should have gone to Michael and Mitchell is currently in Susan's possession. They requested specific performance and sought a constructive trust over property that was not in the estate but held by Susan either individually or as trustee.

The parties filed competing motions for summary judgment. Susan, on behalf of herself individually and as trustee of the Emmett Earlton Sanders, Jr., and Susan Carver Sanders joint revocable trust dated October 1, 2002, argued in relevant part that the complaint should be dismissed because (1) she is an improper defendant in the breach-of-contract action; the contract was between Earlton and Beatrice, and the plaintiffs therefore lacked standing to assert a claim against her, and (2) Earlton had no individually held assets at the time of his death. The appellants argued in their motion that summary judgment in their favor was proper because the PSA created an obligation they may enforce as third-party beneficiaries and that they are entitled to specific performance and the imposition of a constructive trust on assets in Susan's possession sufficient to satisfy their father's $200,000 obligation. They further requested that the court order Susan to file a schedule of all property Earlton had an interest in at the time of his death.

After a hearing, the circuit court ruled from the bench that (1) the breach-of-contract claim could not proceed against Susan because she was not a party to the PSA and thus could not be liable for breaching it, and (2) appellants could not establish unjust enrichment because, in the absence of an actionable breach by Susan, her retention of the property was not unjust.

An order was entered October 2, 2024. The sons filed a notice of appeal on November 1, 2024. A modified order with a Rule 54(b) certification—declaring there was no just reason for delay and that the order was a final judgment—was filed November 5, 2024.[1]

To begin, Susan argues that this court lacks jurisdiction because the appellants failed to file a notice of appeal from the November 5 modified order that contained the Rule 54(b) certificate. The November 5 order was identical to the one preceding it save for the addition of the certification language. We hold that this is no bar to appeal. In *Alberty v. Wideman*, 312 Ark. 434, 850 S.W.2d 314 (1993), the appellant filed his notice of appeal within thirty days of entry of two orders he sought to challenge. Twelve days later, the circuit court entered an order pursuant to Rule 54(b) stating that there was no just reason for delay and declaring the two orders final as to the matters addressed therein. The appellant did not file a notice of appeal after entry of the Rule 54(b) order. The appellee argued dismissal was required, but our supreme court rejected the argument, holding that "it was not necessary to give another notice of appeal after obtaining a certification that the orders from which he seeks to appeal are final orders pursuant to Rule 54(b)." 312 Ark. at 436, 850 S.W.2d at 315. Because the facts here are nearly identical to those in *Alberty*, we hold that dismissal is not required.

---

[1] The appellant's breach-of-contract claim against Earlton's estate is still undecided, but because there are no assets in the estate, dismissing the claims against Susan both individually and as trustee effectively removes the only meaningful source of recovery, making any additional litigation unproductive. The appellants did not waive their claim against their father's estate in their notice of appeal.

4

This brings us to the summary-judgment issue. The appellants first argue that Susan was, in fact, a proper defendant, and the circuit court erred when it dismissed the suit against her.

The circuit court granted Susan's motion for summary judgment and denied the appellants' partial motion for summary judgment. Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, at 3, 423 S.W.3d 548, 550. Ordinarily, upon reviewing a circuit court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist. *May v. Akers-Lang*, 2012 Ark. 7, at 6, 386 S.W.3d 378, 382. In a case where both parties agree on the facts, we simply determine whether the appellee was entitled to a judgment as a matter of law. *Hobbs v. Jones*, 2012 Ark. 293, 412 S.W.3d 844. We review issues of law de novo on appeal. *Cherokee Nation Bus., LLC v. Gulfside Casino P'ship*, 2023 Ark. 153, at 4–5, 676 S.W.3d 368, 371–72.

After review, we agree with the appellants that the circuit court was incorrect to grant Susan's motion for summary judgment and dismiss the appellants' complaint under these circumstances.

The appellants alleged constructive trust in their complaint. They did not allege that Susan breached the contract; they alleged that she held the property that could satisfy their father's obligation under the contract. In her motion for summary judgment, without conceding the points, Susan did not challenge the validity of the contract or whether Earlton

5

breached it; instead, she focused her arguments on the appellants ability to recover against her. The appellants' theory is that they are third-party beneficiaries to a contract, and Susan holds the property to which they are entitled under that contract.

There are several legal theories working together here. First, there is the breach-of-contract action brought by third-party beneficiaries against the estate. Arkansas law recognizes that third-party beneficiaries may enforce contracts made for their benefit. *Perry v. Baptist Health*, 189 S.W.3d 54, 358 Ark. 238 (2004). The status of a third-party beneficiary is generally a matter of law. *Id.* The appellants have presented a contract to make a will naming them beneficiaries. Susan did not controvert this.

Arkansas law further permits beneficiaries to bring a cause of action against an estate to enforce a contract to make a will. Ark. Code Ann. § 28-24-101 (Repl. 2012); *Fletcher v. Long*, 271 Ark. 942, 611 S.W.2d 779 (Ark. App. 1981). Usually, whether a breach of contract occurred is a question of fact. *Reynolds Forestry Consulting & Real Est., PLLC v. Colbey*, 2019 Ark. App. 209, at 13, 575 S.W.3d 176, 184. The circuit court correctly concluded that Susan did not—and in fact could not—breach the contract, but it did not consider if Earlton did. On remand, the circuit court will need to determine whether Earlton's contract to make a will was a valid agreement benefiting the appellants and, if so, whether it was breached. But at the summary-judgment hearing, the appellants presented evidence supporting both elements, and Susan did not challenge that evidence.

If the circuit court concludes that there was a valid agreement to make a will between Earlton and Beatrice in favor of the appellants and that Earlton breached it, then the

6

doctrines of unjust enrichment and constructive trust may support the imposition of a constructive trust over assets that should have passed under the will Earlton was obligated to execute but are instead held by Susan.

A court may impose a constructive trust in the event unjust enrichment would result if a person holding property was permitted to retain it. *Mays v. Viva La Vegan Grocery, Inc.*, 2024 Ark. App. 513, at 26, 700 S.W.3d 750, 771. It is possible for a breach of contract to create unjust enrichment justifying the imposition of a constructive trust in favor of a third-party beneficiary. *Orsini v. Com. Nat'l Bank*, 6 Ark. App. 166, 639 S.W.2d 516 (1982).

The Eighth Circuit reached a similar conclusion in *Crain v. Crain*, 72 F.4th 269 (8th Cir. 2023), which we find persuasive. In *Crain*, four children sought to enforce a PSA their father made with their mother. The PSA required the father to maintain a will leaving at least one-half of his estate to the children. *Id.* at 273-75. At his death, however, no such will existed, and his property had passed largely to his second wife, either through jointly held assets or otherwise outside probate. *Id.* The court held that the children had standing to sue the stepmother even though she was not a party to the agreement between the father and his first wife because the stepmother held the property the children alleged rightfully belonged to them under the PSA. *Id.* at 278–79. As the court explained,

> Here, although [the stepmother] did not breach the PSA, as she was not a party to it, she holds the property that the Appellees allege rightfully belongs to them under the agreement. Appellees' injury—the deprivation of their property rights—is thus directly traceable to [the stepmother]'s continued withholding of the property in violation of her equitable duty to convey it back to them. Because Appellees have suffered an injury in fact which is directly traceable to [the stepmother]'s conduct, and this Court

7

may redress that injury by a favorable decision, we are persuaded that threshold standing requirements are satisfied.

*Crain*, 72 F.4th at 278–79.

Susan argues, though, that the particular PSA here stated that the assets would come from Earlton's "estate at the time of his death," which means "probate estate," and therefore cannot include assets that had already passed to others through joint ownership, trust arrangements, or other nonprobate transfers.

On this point, *Orsini* is instructive. In *Orsini*, divorcees entered into a PSA pursuant to which the husband was required to maintain a life insurance policy naming the couple's daughter as the beneficiary. 6 Ark. App. at 166, 639 S.W.2d at 516. After the husband's death, however, it was discovered that he had breached the contract by naming his new wife as the beneficiary. *Id.* The circuit court found that the daughter was a "third-party beneficiary of the PSA incorporated into her parents' divorce decree" and was therefore entitled to the insurance proceeds. *Id.* at 167, 639 S.W.2d at 517. We affirmed, explaining that it was not erroneous for the circuit court to impose a constructive trust to prevent the new wife's unjust enrichment from the husband's failure to keep his daughter as the named beneficiary. *Id.* To Susan's point, the life insurance proceeds in *Orsini* passed outside of probate entirely, meaning that equitable relief here is not limited to the probate estate.

Moreover, the same argument was advanced by the stepmother (Shirley) in *Crain*. Applying Arkansas law, the Eighth Circuit also concluded that "estate" as it was used in the

8

parties' PSA meant all of the property the father (Dude) owned and controlled when he died.

The court wrote:

> Moreover, Shirley's interpretation of "estate" to mean only "probate estate" is not persuasive. If estate had such a meaning, then Dude could easily circumvent the Will Provision. On the policy side, Shirley argues that interpreting "estate" to include all property which Dude owned prior to death effectively precludes the couple and those in similar situations from owning property jointly or by the entireties. But the Arkansas Supreme Court has already settled this question as a policy matter. *See, e.g.,* *Janes v. Rogers*, 224 Ark. 116, 271 S.W.2d 930, 933 (1954) (concluding that a contract to make a will "is applicable to property held by the spouses in an estate by the entirety, even though it would not pass under the will of either spouse but would devolve on the surviving spouse by operation of law"). Dude was free to do whatever he wanted with half of his property, including owning it jointly with Shirley, but the other half "was subject to and encumbered by the superior contractual rights of [his four] children." *Gregory v. Est. of Gregory*, 315 Ark. 187, 866 S.W.2d 379, 383 (1993). To conclude, "estate" means everything Dude owned prior to death—whether he owned it separately or jointly with Shirley—and he therefore breached the PSA when he failed to leave half of this property to Appellees.

*Crain*, 72 F.4th at 280.

Finally, Susan explains that she cannot be unjustly enriched when the jointly titled property was property that *she* owned before the marriage. But because the circuit court erroneously concluded that the reason unjust enrichment fails is because Susan did not breach the contract, this point requires reversal.

If the circuit court determines on remand that there was a valid contract and a breach, the next step will be to identify which assets Earlton held or controlled at the time of his death that could satisfy that obligation. Susan specifically points to ninety-two acres she owned before the marriage that was later jointly titled and asserts that equity would demand

9

that it be excluded from consideration as well as other property she brought into the marriage.

Susan makes a fair point. In order to determine if the imposition of a constructive trust is appropriate, the property must be sufficiently identified and traceable. *Malone v. Hines*, 36 Ark. App. 254, 822 S.W.2d 394 (1992). A constructive trust will follow property through all changes in its state or form so long as the property, its product, or its proceeds are capable of identification. At the summary-judgment hearing the appellants presented evidence that certain real property was jointly held by Earlton and Susan at his death. This is sufficient to survive summary judgment—the appellants demonstrated that Earlton had an interest in property that is in Susan's possession—but the true determination of which assets Earlton had an interest in and to what extent equity allows the appellants to reach those assets lies in the circuit court's discretion after a review of all the evidence. *See generally Russell v. Russell*, 2013 Ark. 372, at 7, 430 S.W.3d 15, 20 ("We have long recognized that circuit courts, in traditional equity cases, have broad powers to distribute the property in order to achieve an equitable division."); *see also Crain*, 72 F.4th at 282 ("Ultimately, the district court undertook a massive, thorough, and reasoned approach to equitably dividing property between Shirley and Appellees. Its extensive order identifying, classifying, painstakingly tracing, and dividing these assets lay bare its dedication to doing justice among the parties in accordance with its wide discretion to fashion equitable relief."). As part of their motion, appellants requested a schedule of assets, which will be necessary for tracing in the event the litigation progresses to this point.

Because the circuit court erred in concluding that the entirety of Susan's involvement as a defendant hinged on privity of contract (or really, lack thereof), we reverse the finding of summary judgment in her favor. The circuit court's denial of the appellants' motion for partial summary judgment was based on the same conclusions for which it granted Susan's; it is therefore also reversed. This matter is remanded so that the case might proceed on the merits.

Reversed and remanded.

TUCKER and BARRETT, JJ., agree.

*Barry D. Baker*, for appellant.

*Tim Cullen*, for appellee.

11